**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LAWRENCE WILLIAM LEE,<br><br>Plaintiff,<br><br>v.<br><br>JOYETTE HOLMES, current Chair of the State Board of Pardons and Paroles; WAYNE V. BENNETT, current Vice Chair of the State Board of Pardons and Paroles; KIMBERLY McCOY, current Board Member; ROBERT MARKLEY, current Board Member; and JOSH WATERS, current Board Member,<br><br>Defendants. | Civil Action |

**PLAINTIFF LAWRENCE WILLIAM LEE'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Pursuant to F. R. Civ. P. 8, Plaintiff, Lawrence William Lee, brings this Complaint for Declaratory Judgment and Injunctive Relief and states as follows:

## NATURE OF THE ACTION

1. Plaintiff Lawrence William Lee ("Mr. Lee") brings this action for declaratory judgment and injunctive relief under 42 U.S.C. § 1983, because he remains in prison on account of a contrived and since dismissed allegation that he committed a heinous triple murder, when in fact he had no involvement whatsoever in those murders.

2. Mr. Lee is 65 years old (born in 1960) and has been incarcerated since 1986 based on a sentence of life (that is subject to parole after seven years) for his participation, as a non-violent accessory, in a felony murder in Glynn County. Mr. Lee, who has been a model prisoner for his entire 39 years in prison and has never committed a violent criminal act himself. He would long ago have been paroled but for the fact that he was wrongfully accused and wrongfully convicted for an unrelated triple murder in Wayne County. Although those charges have since been completely discredited and dismissed, they remain the only reason he has not been paroled. Mr. Lee was denied parole as recently as January 5, 2026.

3. This Complaint asserts claims arising under the Due Process Clauses and Eighth Amendment of the United States and Georgia Constitution.

Pursuant to these constitutional provisions, this Complaint seeks a declaration that in considering parole for Mr. Lee, the the Georgia Parole Board may not consider false information, including the dismissed allegations that Mr. Lee was involved in a triple murder in Wayne County and relatedly may not consider objections to parole that are based upon the Jones murders.

4. The Complaint also seeks declaratory and injunctive relief requiring the Parole Board to identify the materials and crimes that it has considered in its decision so as to provide at least a minimal procedural protection against the consideration of crimes that have no connection to the parolee.

**BACKGROUND FACTS**

5. On November 24, 1987, Mr. Lee was wrongfully convicted in the Superior Court of Wayne County, of breaking into the home of and murdering three members of the Jones family, Clifford Jones, his wife, Nina Jones, and their young son, Clifford Jones Jr., very early in the morning on Saturday, April 26, 1986 (hereinafter the "Jones murders").

6. Notwithstanding the wealth of fingerprint, blood and fiber evidence at the crime scene (the Jones home), there was not a shred of physical evidence linking Mr. Lee to these murders.

7. The only evidence purporting to link Mr. Lee to the Jones murders came from fabricated testimony, induced through unconscionable and unethical

coaching, threats, and promises by prosecutors, from witnesses who had previously made prior inconsistent and/or exculpatory statements to authorities. These prior inconsistent and exculpatory statements were wrongfully concealed from Mr. Lee and his counsel until well after his wrongful convictions and sentence of death for the Jones murders.

8. Twenty-two years after the Jones murders, on April 28, 2008, based on a) the discovery of the concealed exculpatory evidence; b) further evidence demonstrating that two other individuals (the Yarbrough brothers) more likely had committed the Jones murders; and c) the absence of any reliable inculpatory evidence linking Mr. Lee to the Jones murders, the Hon. Chief Judge Gary C. McCorvey vacated Mr. Lee's convictions and death sentence. In his 188-page opinion, Judge McCorvey excoriated the prosecution's misconduct.

9. As reflected in Judge McCorvey's opinion, habeas defense counsel investigated and presented evidence in post-conviction proceedings demonstrating to a virtual certainty that the Yarbrough brothers had committed the Jones murders. Less than a year after the Jones murders, on March 9, 1987, the Yarbrough brothers robbed and killed a store clerk, Glenda Jackson, within the geographic vicinity of the Jones home. Shortly before the Jones murders, the Yarbrough brothers had worked at the Jones home and knew that very early on a Saturday morning (when the murders occurred) the Jones family would have cash at home from their family restaurant receipts.

Joe Yarbrough had been heard stating he was "going to get" Clifford Jones for allegedly refusing to pay for work the Yarbroughs did on the Jones home. The Yarbroughs drove vehicles matching the description of vehicles seen in the vicinity of the Jones home on the morning of the Jones murders. Joe Yarbrough left home at 5:30 a.m., shortly before the murders, and then failed to go to work as scheduled and wasn't seen for a day. And after the murders, Joe Yarbrough had scratch marks on his arms, neck and face, and had money with which he purchase expensive gifts that he otherwise could not afford.

10. Unrelated to the Jones murders, in June 1986, Mr. Lee participated with his older brother, Bruce Lee, and Bruce Lee's wife (Sherry Lee) in robbing the Moore home in Glynn County, but did so without a weapon and only after confirming that no one was home. When Mr. Moore returned home unexpectedly, he and a neighbor engaged in a shoot-out with Bruce Lee, during which both Mr. Moore and Bruce Lee were killed. After initially fleeing the scene, Mr. Lee turned himself in for his complicity in the Moore felony murder.

11. While incarcerated for the Moore felony murder, but before he had pled guilty to it, Mr. Lee was framed, through extensive prosecutorial misconduct, for the unrelated triple murder of the Jones family in Wayne County (also in the Brunswick Judicial District) that had occurred on April 26, 1986, roughly six weeks earlier.

12. On November 24, 1987, Mr. Lee was wrongfully convicted and sentenced to death for the Jones family triple murders.

13. On March 17, 1988, following his guilty plea to the Moore felony murder, Mr. Lee was sentenced to life in prison (with the possibility of parole) for his role in that felony murder. Under Georgia law, absent the later vacated conviction for the Jones murders, Mr. Lee was eligible for parole for the "Moore sentence" after seven years, or as early as 1993.

14. Throughout the course of his now 39 years in custody, Mr. Lee has been a model prisoner. He has not had a single disciplinary issue while in prison. His parole applications have been supported enthusiastically by his wardens and prison officials.

15. To the best of Mr. Lee's belief other than Mr. Lee, no other Georgia prisoner who pleaded guilty in or before 1986 to a single felony murder and who did not carry a weapon and was not the trigger-person, and who otherwise had a perfect prison record, is still serving time for that crime.

16. Many individuals who were triggerpersons and who were convicted and sentenced to life in prison, after Mr. Lee was convicted and sentenced, have been paroled.

17. Even Robert Yarbrough, whom the evidence shows was actually responsible for Jones murders, was granted parole in 2011 for his 1987 murder and robbery of the elderly store clerk, Glenda Strickland, (Joe Yarbrough was

also convicted of the Strickland murder and subsequently died in prison).

18. In June 2021, Mr. Lee was tentatively granted parole. Thereafter the surviving member of the Jones family, Christy Jones, publicly stated, "We would appreciate the community's help in keeping Larry Lee in prison with letters and emails to the Parole Board." (Jesup Press Sentinal, July 28, 2021). After the Parole Board heard from victims and community members, the tentative grant of parole was reversed and Mr. Lee was denied parole. Other than granting tentative parole in 2021, the Georgia Board of Pardons and Paroles (the "Board") has issued perfunctory denials of parole on an annual basis.

19. During his interviews in connection with consideration of parole, Mr. Lee is consistently asked whether he accepts responsibility for the Jones murders, even though there is no connection between those murders and Mr. Lee.

20. Georgia Prison and Parole Board Rule 475-3-.05(2) provides that a prisoner who is denied parole shall be informed "of the reasons for such denial" without disclosing confidential sources of information…." This provision gives rise to a liberty interest in knowing whether a crime for which the prisoner was not guilty is part of the reasons for denying parole. It also gives rise to a liberty interest in knowing whether objections to parole from victims of a crime the prisoner did not commit are part of the reason for denial.

21. The parole board has refused to disclose to Mr. Lee the actual reasons for the denials of parole for Mr. Lee, including whether his false arrest and conviction for

the Jones Murders and/or objections related to the Jones Murders were part of the reasons for those denials.

22. On or about April 9, 2025, Mr. Lee submitted an Open Records Act request seeking, among other information, documents sufficient to show whether the parole board has "policies, procedures or practices [that] serve to prevent the parole board from considering crimes which the parole did not commit" or that "prevent the parole board from considering crimes for which the parolee was charged but as to which the charges were later dismissed or nolle prosequi'd." In response, the Parole Board stated that it had no responsive records. (*See* Exhibit A, Mr. Lee's April 9, 2025 Open Records Act request and response. The response is provided in its entirety except for Judge McCorvey's April 28, 2008 opinion. The 188-page opinion has been omitted to avoid unduly burdening the record; Mr. Lee will provide a copy upon the Court's request.)

23. The limited records supplied by the Parole Board in response to this Open Records request reflect that Mr. Lee's parole records include a public record of Mr. Lee's indictment and since vacated conviction for the Jones murders.

24. There is no plausible basis for the Parole Board's denial of parole to Mr. Lee in connection with his life sentence for the Moore felony murder, other than the Parole Board's improper consideration of the false allegations that Mr. Lee committed the Jones murders.

25. The Parole Board's refusal to state whether it has considered and/or relied upon false information (in this case allegations that Mr. Lee was involved in the Jones murders) and its refusals to provide specific information about the reasons for its otherwise inexplicable denials of parole for Mr. Lee deny Mr. Lee even minimal procedural protections.

## THE PARTIES

### *Plaintiff*

26. Plaintiff, Lawrence William Lee ("Mr. Lee") is currently incarcerated in DeKalb County.

### *Defendants*

27. Defendants are all current members of the Board. Each Defendant has acted under the color of state law. Mr. Lee sues them each in their official capacity for declaratory and injunctive relief. All the Board Defendants may be served in person at the State Board of Pardons and Parole, 2 Martin Luther King, Jr. Dr. S.E., Atlanta, Georgia 30334, or via counsel.

28. Defendant Joyette Holmes is the chair of the Parole Board and has served as a member of the Board since January 2024. Holmes participated in the denial of parole to Mr. Lee in July 2024 and January 5, 2026.

29. Defendant Wayne V. Bennett is the vice chair of the Parole Board and has served as a member of the Board since March 2024. Bennett participated in the denial of parole to Mr. Lee in July 2024 and January 5, 2026.

30. Defendant Robert Markley has served as a member of the Parole Board since January 2025 and participated in the denial of parole to Mr. Lee on January 5, 2026.

31. Defendant Kimberly McCoy was appointed to the Parole Board on December 1, 2025, and on information and belief, participated in the denial of parole to Mr. Lee on January 5, 2026.

32. Defendant Josh Waters was appointed to the Parole Board effective January 1, 2026 and on information and belief, participated in the denial of parole to Mr. Lee on January 5, 2026.

## JURISDICTION

33. Mr. Lee brings this action pursuant to 42 U.S.C. § 1983, with claims arising under the Due Process Clause and the Eighth Amendment of the United States Constitution, as applied to the state of Georgia through the Fourteenth Amendment of the United States Constitution, as well as their Georgia Constitution counterparts.

34. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

35. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

36. Under 28 U.S.C. § 1391, venue is proper in the Northern District Georgia because all Defendants are Georgia residents and work in the District.

*Id.* § 1391(b)(1). Further, Mr. Lee is incarcerated in Fulton County. For the same reasons, the action is brought in the Atlanta Division.

## BACKGROUND ALLEGATIONS

*Mr. Lee's Crime, Conviction, and Sentence*

37. As stated above, Mr. Lee is currently incarcerated pursuant to a life sentence that he received approximately 40 years ago for his role as an accessory in the burglary and murder of Mr. Moore in Glynn County in 1986. When sentenced to life (with the possibility of parole) for the Moore murder, Mr. Lee was already under sentence of death on account of his erroneous conviction for the Jones murders in Wayne County.

*Mr. Lee Is Framed for the Murders of the Jones Family*

38. As Judge McCorvey found, in vacating the erroneous convictions of Mr. Lee for the Jones murders, there was "absolutely no forensic evidence linking [Mr. Lee] to the murders [of the Jones family] or even the crime scene." Order, *Lee v. Terry*, No. 89-2325 (Butts Super. Ct. Apr. 28, 2008) ("Order") at 47.

39. Forty-seven latent fingerprints were recovered from the Jones crime scene. *Id*. at 4. None of the prints matched Mr. Lee or his alleged accomplices, Bruce Lee and his wife, Sherry Lee, who were Mr. Lee's older brother and sister-in-law. *Id*. at 4-5. Since the trial, and before the Yarbrough's culpability was investigated, all of the fingerprint evidence was destroyed "in

violation of state law and GBI policy mandating its retention, [even though] other [unrelated] 1986 fingerprint files have not been lost." *Id*. at 183 n.406.

40. To frame Mr. Lee in the absence of any physical evidence, the State first rewarded a jailhouse snitch, David Anthony Morris, who had been inserted into a neighboring cell in order to fabricate a story that Mr. Lee had confessed to the Jones murders. The prosecution wrongfully withheld evidence and actively misled the jury and the trial judge on the prosecutor's dealings with Morris. Ironically, some of the evidence of the prosecution's improper and undisclosed dealings with Morris first came to light during the habeas proceeding, from the State Board of Pardons and Paroles' own files on Morris.

41. Thereafter, to corroborate Morris's false story, the prosecution induced Bruce Lee's wife, Sherry Lee, to provide false statements implicating Mr. Lee in the Jones murders. Before she did so, Sherry Lee repeatedly made statements to police that she and Mr. Lee had no involvement in the Jones murders. The prosecution wrongfully withheld those exculpatory statements from Mr. Lee.

42. Sherry Lee gave her false testimony implicating Mr. Lee only after the prosecution: (1) falsely told her the State had evidence implicating her in the Jones murders and that she would get the death penalty and never see her child if she did not cooperate by implicating Mr. Lee in the Jones murders; (2) falsely told her she had failed a polygraph examination related to the Jones murders,

when she had passed a polygraph by truthfully stating that she and Mr. Lee had no involvement in the Jones murders; and (3) offered her a monetary reward and immunity from prosecution in exchange for her providing false testimony against Mr. Lee. *Id*. at 42.

43. In an effort to corroborate Sherry Lee's false testimony, the prosecution persuaded a Jones family neighbor, Hazel Moody, to testify that she saw a car that was similar to Sherry Lee's car, near the Jones's residence on the morning of the murders. But Hazel Moody identified Shery Lee's car only after a) giving prior inconsistent statements, and b) law enforcement had shown her "a photograph of Sherry Lee's car, t[elling]her that it was the suspect's car, and ask[ing] her if that was the car she had seen." *Id*. at 60. These prior inconsistent statements were also wrongfully withheld from Mr. Lee.

44. In a further effort to find some physical evidence connecting Mr. Lee to the murders, the prosecution misrepresented evidence to suggest a gun that Bruce Lee had pawned was taken from the home and that Larry Lee was somehow connected to a green "Trust Company" bank bag that was supposedly taken from the Jones's home. But the gun inventory demonstrated no such gun was missing from the Jones home and the State never connected such a bag to Mr. Lee. *Id*. at 4. And, the one surviving member of the Jones family, their daughter, Christi Jones (who was absent from the home the morning of the murders), testified that a green "Trust Company" bank bag was taken from the

home only after the District Attorney explicitly described to her such a green "Trust Company" bank bag and requested she so testify, notwithstanding prior inconsistent statements. *Id*

45. In contrast to the absence of any reliable evidence linking Mr. Lee to the Jones murders, there was a wealth of evidence that two brothers, Robert and Joe Yarbrough, committed the murders. As Judge McCorvey stated, the case for the Yarbroughs' guilt is "certainly circumstantially stronger against the two of them than against [Mr. Lee]." *Id*. at 118.

46. Evidence implicating the Yarbroughs includes:

- Joe and Robert Yarbrough knew the Joneses and had worked at the Jones home doing remodeling work shortly before the murders;
- Robert Yarbrough had approached a high school friend about joining him and Joe in casing the Jones family's restaurant to see how much money they brought in;
- Joe Yarbrough knew Clifford Jones kept a lot of money from the family restaurant in his home, particularly on a Saturday morning before banks were open;
- Joe Yarbrough was angry with Clifford Jones because Clifford had refused to pay the Yarbroughs for work they had done on the Jones home, leading Joe to say in reference to Clifford Jones, "I'm going to get that bastard";

- Joe Yarbrough owned a number of .22 caliber weapons, and the Joneses were shot with .22 caliber weapons;
- Joe Yarbrough came home angry around 4:00 a.m. on the morning the Jones family was murdered. He left his home around 5:30 a.m. (shortly before the murders) saying that he was going to open the store where he worked, but he did not open the store that day. Indeed, Joe Yarbrough did not go to work that day, and did not return home until the next day;
- Clifford Jones had marks on his back consistent with a shotgun being shoved in his back. Joe Yarbrough's wife said that Joe had previously shoved a shotgun in her back and threatened to kill her. Further, Joe Yarbrough used a shotgun in robbing and murdering Glenda Strickland. That shotgun was missing its fore-end. Investigators had discovered wood fragments in the rug where Clifford Jones had been assaulted that could be explained by a shotgun missing its fore-end;
- The day after the murders, Joe Yarbrough told his wife that the Jones family had been killed, and described the crime scene in considerable detail at a time when information about the crime scene had not been publicly disseminated;

- In the days after the Jones murders, Joe Yarbrough bore deep scratches on his arm consistent with a violent struggle, and the Joneses had been beaten, stabbed, and shot in the course of a violent struggle;
- In the weeks after the Jones family was murdered, Joe Yarbrough spent lavishly on his family in a way he had not done before and could not ordinarily afford; and
- Two days after the Jones family was murdered and a First National Bank bag was stolen from their home, Joe Yarbrough brought an extra First National Bank bag to work. *Id.* at 70-73, 166-72 nn.260, 269.
- A witness, Jimmy Grant, saw two vehicles speeding away from the Jones's home in tandem around the time of the murders. Grant described the cars as a silver-colored car, like a Trans Am, and a small, beige pickup truck with writing on the side. At that time, the Yarbroughs owned a small pickup with writing on the side and a silver sports car. *Id.* at 162 n.215, 169 n.269. The Yarbroughs also both matched the physical description of the person driving the Trans Am that Grant saw speeding away from the Jones's home. *Id.* at 169 n.269.
- The GBI profile of the killers indicated that they: (1) were probably local residents who knew the victims; (2) probably knew Clifford Jones and his son were leaving for a fishing trip on April 25, 1986; (3) probably knew Christi Jones would be leaving for a high school graduation trip

early on the morning of April 26, 1986; (4) probably thought Nina Jones would be alone in the house after Christi left early that morning; and (5) probably knew, in her husband's absence, Nina Jones would have closed up the family restaurant and had with her the receipts from the previous two evenings. This profile created a pool of suspects that both excluded Mr. Lee and implicated the Yarbroughs.

*Mr. Lee is Granted Habeas Relief*

47. In April 2008, Judge McCorvey vacated the Jones convictions and Mr. Lee's death sentence. In his 188-page opinion, Judge McCorvey excoriated the misconduct of the prosecution in framing Mr. Lee and noted that there was stronger evidence that the Yarbrough brothers had killed the Jones family.

*The Prosecution Nolle Prossed the Charges Accusing Mr. Lee of the Jones Murders*

48. On June 2, 2015, the prosecution filed a motion to nolle prosequi the Jones indictments against Mr. Lee.

49. In the Nolle Prosse motion, the State recounted certain evidence in a manner that could be interpreted as suggesting that there had been plausible evidence of Mr. Lee's guilt for the Jones murders.

50. In granting the Nolle Prosse motion, Judge E.M. Wilkes III, expressly stated that, "the Court's granting of the State's Motion does not indicate the Court's acceptance of the representations of fact and law contained in the motion, other than the State's representation that it lacks sufficient

evidence to prosecute this case." (June 2, 2015 Order at n. 1.) This determination was a rejection of any suggestion in the Nolle Prosse Motion that Mr. Lee was guilty of the Jones Murders.

*Mr. Lee's Prison Record Is Unblemished, He Meets All Criteria for Parole Eligibility, and Is a Paradigm Candidate for Parole*

51. Mr. Lee has been a model prisoner for the nearly 40 years he has been in prison, since his incarceration in 1986, for a felony murder committed when he was 26 years old (and for which he pleaded guilty).

52. While in prison, Mr. Lee earned a GED degree and scored in the top 1% in the nation on his GED test. He also received an associate's degree from Ashland College, graduating with honors.

53. Mr. Lee has secured certification as a welder and certification as an assistant in HVAC repair. He also has also received a certification for "safe service" that would allow him to work in a restaurant.

54. Mr. Lee's prison record reflects he has had zero disciplinary tickets or problems in his entire almost 40 years behind bars.

55. Throughout his incarceration, Mr. Lee has worked closely with members of the ministry and has had strong and steady support from close family and friends who are committed to working with him in connection with any parole arrangement. He has also served as an assistant to the Warden. Mr. Lee has a compelling plan to serve productively upon release, and has

demonstrated the ability to be a productive and contributing member of society if afforded that opportunity.

56. Mr. Lee has greatly impressed everyone who has come to know him in prison with his character, humility, and remorse for the crimes he did commit.

57. Mr. Lee has mentored scores of prisoners and has facilitated classes for prisoners that are mandated by the Parole Board. Mr. Lee has been consistently supported in his parole applications by prison administrators and staff who have been responsible for him in prison.

58. Although Mr. Lee was wrongly framed and sentenced to death for a heinous triple murder that he did not commit, he holds no animus or resentment for those events.

*The Parole Board Has Granted Parole to All Other Persons Similarly Situated to Mr. Lee*

59. But for his wrongful convictions for the Jones murders, Mr. Lee would have been eligible for parole in 1993, and Mr. Lee became eligible for parole for the Moore felony murder in 2008, when the Jones convictions were vacated.

60. To the best of Mr. Lee's knowledge and information, no one in the state of Georgia, other than Mr. Lee who was sentenced to a term of life in prison in or prior to 1986 for a single felony murder in which he had no weapon and was not the trigger-person and who had a perfect prison record, is still serving time for that crime.

61. By contrast, multiple defendants who were sentenced to life in prison *after* Mr. Lee, based on their role as the trigger-person (which Mr. Lee was not) have been granted parole or been transferred to the Atlanta Transitional Center as part of the process of granting parole, while Mr. Lee has been repeatedly denied parole. These include:

- Curtis Curry, murder committed November 29, 1998; sentenced to life plus 25 years; now at Atlanta Transitional Center.
- Levy James, murder committed April 24, 1997; sentenced to life; fully paroled.
- Jason Fudge, murder committed August 13, 2003; sentenced to life plus 5 years; paroled on December 9, 2024.
- Lewis Joiner, murder committed November 15, 1995; sentenced to life plus 45 years, was paroled in April 2025
- James Batsel, murder committed February 10, 1993; sentenced to life plus 50 years, was paroled in April 2025.
- Theowanda Lamb, murder committed July 31, 1993; sentenced to life; has been transferred to the transitional center.
- Mark Hornsby; crime committed June 1992; sentenced to life; has been transferred to the transitional center.
- Dennis Alexander; crime committed July 1996; sentenced to life plus 10 years; has been transferred to transitional center in Augusta.

*The Georgia Board of Pardons and Paroles' Denials of Parole Are Necessarily Based on Consideration of the Jones Murders and Opposition to His Parole from Members of the Jones Family and Community*

62. For the reasons set forth above, there is no plausible explanation for the denial of parole to Mr. Lee, other than the parole board has been wrongfully considering that Mr. Lee had a role in the Jones murders. Mr. Lee's parole file contains copies of the Jones indictments and verdicts, among other documents. As noted, Mr. Lee is consistently asked, in his parole-related interviews, whether he will accept responsibility for the Jones murders, even though he had nothing to do with them. And the tentative grant of parole to Mr. Lee in June 2021 was reversed only after the surviving Jones family member publicly called for opposition to Mr. Lee's parole.

*In Connection with Parole Determinations, the United States and Georgia Constitutions Preclude Consideration of False Information and of Crimes as to Which the Parolee Had No Involvement*

63. Because Mr. Lee is factually innocent of the Jones Murders, he has a liberty interest in not having the Jones murders considered in connection with parole determinations that concern parole for the Moore conviction.

64. Mr. Lee submitted Open Records Requests asking the Board to identify and produce documents sufficient to show what steps the Board had made to ensure that the Parole Board was *not* considering the Jones murders in connection with Mr. Lee's parole denials; the Parole Board stated it did not have responsive documents. (*See* Exhibit A.)

**Count I: Fourteenth Amendment: Due Process**

65. Mr. Lee incorporates by reference paragraphs 1 through 64 above as if set forth fully herein.

66. Mr. Lee has a constitutionally protected liberty interest in the Parole board not considering false information in connection with his parole considerations. *Monroe v. Thigpen*, 932 F.2d 1537 (11th Cir. 1991).

67. Parole Board Rule 475-3-.05(2) requires disclosure "of the reasons for" the denial of parole, without disclosing confidential sources of information.

68. Mr. Lee has a constitutionally protected liberty interest in knowing whether, in denying him parole, the parole board has considered the Jones murders and/or views of Jones Murder victims.

69. Mr. Lee has a constitutionally protected liberty interest in not suffering a continued loss of liberty due to the false attribution to him of murders that he did not commit.

70. Mr. Lee has a constitutionally protected liberty interest in a parole decision that does not constitute a "flagrant and unauthorized" practice.

71. Under Georgia Code Section 35-3-37(i)(B), a dismissed indictment or accusation may be considered part of a criminal history record if the prosecuting attorney indicates that the allegations were dismissed because "the prosecuting attorney was barred from introducing material evidence against the

individual on legal grounds, including, without limitation, the granting of a motion to suppress or motion in limine."

72. The nolle prosequi motion filed by the District Attorney's Office could be read to suggest that the charges against Mr. Lee were being dismissed because the Court had barred the introduction of material evidence by granting a motion to suppress, the testimony of the then deceased Sherry Lee. But Judge Wilkes expressly stated in his Order granting the nolle prosequi motion that the Court was not accepting the District Attorney's assertions of fact or law, other than its assertion that it lacked sufficient evidence to prosecute, and in so doing indicated that there was no reasonable basis to hold Mr. Lee responsible for the Jones Murders.

73. In *Thompson v. Clark,* 596 U.S. 36 (2022), the Supreme Court ruled that for purposes of a Section 1983 claim under the Fourth Amendment for false arrest and/or malicious prosecution, a dismissal or nolle prosequi of criminal charges should not be treated any differently than an acquittal, as both represent a favorable and final disposition of criminal charges.

74. This continued attribution of the Jones murders to Mr. Lee and the continued consideration of the Jones murders and/or opinions of family members and community members about the Jones murders in connection with parole considerations of Mr. Lee, deprives Mr. Lee of his constitutionally protected

liberty interests without due process of law in violation of the Fourteenth Amendment.

75. The Parole Board's refusal to provide reasons to Mr. Lee for the denial of his parole violates the Parole Board's own rules and also violates his most fundamental due process rights and prevents him from receiving a fair opportunity to be heard.

**Count II: Eighth Amendment**

76. Mr. Lee incorporates by reference paragraphs 1 through 75 above as if set forth fully herein.

77. The Eighth Amendment prohibits disproportionate punishment that is cruel and unusual.

78. "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Graham v. Florida*, 560 U.S. at 71 (2010).

79. It is cruel, unusual and disproportionate to continue to incarcerate Mr. Lee on account of crimes he did not commit.

80. It is cruel, unusual and disproportionate to deny Mr. Lee information about the real reasons for his denials of parole, when the parole board rules require disclosure of the same and when both federal parole practice and the parole board practice in multiple states require disclosure of that type of information.

81. It is cruel, unusual and disproportionate to sentence and/or incarcerate Mr. Lee for life without a meaningful opportunity for parole based only on his role as an accessory in a felony murder in which he personally committed no violent acts, was not present for the commission of any violent acts, and did not intend for, encourage or directly facilitate an act of violence.

82. Absent consideration of the Jones murders, Mr. Lee was eligible for parole for his role in the Moore felony murder after 7 years or in approximately 1993. Because of the Parole Board's wrongful consideration of the Jones murders, Mr. Lee's sentence for the Moore felony murder has effectively been converted into a sentence of life without parole in violation of the Eighth Amendment.

83. Had Mr. Lee been considered for parole in 1993, when he should have been first eligible for parole, but for the false attribution of the Jones Murders to him, he would have been paroled long ago.

84. In the context of determining whether or not Mr. Lee should still be incarcerated, it is cruel and unusual and disproportionate to treat charges against Mr. Lee related to the Jones murders, any differently than an acquittal of such charges.

85. In the context of determining whether or not Mr. Lee should still be incarcerated, it is cruel and unusual and disproportionate to subject Mr. Lee to heightened requirements for parole that were not in effect when Mr. Lee would

have been considered for parole but for his wrongful conviction for the Jones Murders.

86. Acting in their official capacity as representatives of the State, Defendants' continuous and rote denials of parole for Mr. Lee have failed to meaningfully consider or address Mr. Lee's innocence for the Jones murders and have wrongfully considered the Jones murders and the views of community and family members related to the Jones murders. As consequence of their consideration of the Jones' murders, Defendants' repeated and rote denials of parole give rise to a cruel, unusual and disproportionate punishment.

87. Defendants' past, present, and continuing failure to afford Mr. Lee a meaningful opportunity for release based on demonstrated qualification for the constitutes disproportionate punishment with no legitimate penological justification, and as such constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983.

## Prayer for Relief

**WHEREFORE**, Plaintiff prays this Court order the following relief:

1) Declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. Rule 57 finding and declaring that:

a. The Parole Board must provide Mr. Lee with specific information about the actual reasons for the denial of parole to him as well as

specific information about whether it has considered the Jones murders or opinions or information related to the Jones murders in connection with his parole determinations.

b. The Parole Board may not consider the Jones murders nor the opinions of interested persons with respect to the Jones murders in connection with consideration of parole for Mr. Lee.

c. Defendants have deprived Mr. Lee of his constitutionally protected liberty interests without due process of law and in violation of the Eighth Amendment by considering the Jones murders and/or views of community or family members related to the Jones murders in connection with consideration of parole for Mr. Lee.

d. The charges against Mr. Lee related to the Jones case and proceedings related thereto do not constitute a criminal record within the meaning of Georgia law.

2) A permanent injunction pursuant to Fed. R. Civ. P. Rule 65 and 28 U.S.C. § 2202 ordering the following:

a. Prohibiting Defendants from considering in any way the Jones murders or the views of family and community members with respect to the Jones murders in connection with any further parole determinations for Mr. Lee.

b. Ordering Defendants to develop rules, regulations, policies, procedures, and/or guidelines that:

i. Foreclose consideration of crimes and opinions related to crimes for which the parolee has no responsibility or involvement.

ii. Require provision of specific information regarding the actual reasons for the denial of parole.

3) Award the Mr. Lee the cost of this litigation and reasonable attorney's fees.

4) Any such other relief as the Court deems just and equitable.

Respectfully submitted this _____ day of ___, 2026.

GARLAND, SAMUEL & LOEB,
Attorneys for Plaintiff

By:____________________________________

Donald F. Samuel
GARLAND, SAMUEL & LOEB
Garland Law Building
3151 Maple Drive
Atlanta, Georgia 30305
Telephone: (404) 262-2225
Email: Dfs@gsllaw.com

David J. Bradford
Daniel J. Weiss
Paul B. Rietema
Lindsey A. Lusk
Ashlee N. Carrasco
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

## CERTIFICATION OF COMPLIANCE

The undersigned attorney hereby certifies that the foregoing **PLAINTIFF LAWRENCE WILLIAM LEE'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** was prepared in accordance with N.D. Ga. L.R. 5.1, using Century Schoolbook, font, 13 point.

This _____ day of _____, 2026.

_________________________________
Donald F. Samuel